```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS

GREATER NEW YORK MUTUAL INSURANCE
COMPANY a/s/o SAINT PAUL ARMS
CONDOMINIUM ASSOCIATION,
          Plaintiff,

          v.                                CIVIL ACTION NO.
                                            13-10164-MBB
LAVELLE INDUSTRIES, INC.,
          Defendant, and

TOTO U.S.A., INC.,
          Defendant and
          Third-Party Plaintiff,

          v.

ERIK DEUTSCH and JULIE HONG,
          Third-Party Defendants.
```

**MEMORANDUM AND ORDER RE:**
**THIRD-PARTY DEFENDANTS ERIK DEUTSCH AND JULIE HONG'S**
**MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 73);**
**DEFENDANT LAVELLE INDUSTRIES, INC.'S MOTION FOR**
**LEAVE TO FILE MOTION FOR SUMMARY JUDGMENT (DOCKET**
**ENTRY # 75); DEFENDANT/THIRD PARTY PLAINTIFF,**
**TOTO U.S.A., INC.'S MOTION FOR LEAVE TO FILE**
**MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 80)**

**June 6, 2016**

**BOWLER, U.S.M.J.**

Pending before this court is: (1) a motion for leave to file a summary judgment motion filed by defendant Lavelle Industries, Inc. ("Lavelle") (Docket Entry # 75); (2) a second summary judgment motion filed by third-party defendants Erik Deutsch ("Deutsch") and Julie Hong ("Hong") (Docket Entry # 73); and (3) a motion for leave to file a summary judgment motion filed by defendant and third-party plaintiff Toto U.S.A., Inc.

("Toto") against plaintiff Greater New York Mutual Insurance Company ("GNY" or "plaintiff") (Docket Entry # 80). The foregoing parties filed the above motions more than ten months after the June 15, 2015 deadline to file dispositive motions. Trial is set to commence on July 25, 2016 in this case, which is now more than three years old.

## BACKGROUND

This subrogation action arises out of a water leak originating in a toilet in unit 403 of the Saint Paul Arms Condominium building ("the St. Arms building") in Brookline, Massachusetts that took place in September 2010. (Docket Entry # 58, ¶ 1). On January 25, 2013, GNY, after allegedly paying a claim filed by its insured, the St. Arms Association, for the property damage to the St. Arms building, filed a complaint against Toto and Lavelle ("defendants") setting out breach of warranty and negligence claims. (Docket Entry # 1). The toilet is a "Toto toilet Model CST854 equipped at the time of manufacture with a fill valve manufactured by Lavelle." (Docket Entry # 1, ¶ 9) (Docket Entry # 7, ¶ 9). On March 2, 2015, this court allowed Toto leave to file a third-party complaint against Deutsch and Hong, former residents and owners of unit 403. An amended third-party complaint filed on April 7, 2015 sets out two contribution claims, one against Deutsch and the other against Hong.

On April 26, 2016, Deutsch and Hong filed the second summary judgment motion on the contribution claims brought against them by Toto in the third-party complaint. (Docket Entry # 73). They filed their first summary judgment motion on August 20, 2015 on the same contribution claims based on an argument that a good faith settlement with GNY extinguishes the contribution claims under Massachusetts General Laws chapter 231B, section four. (Docket Entry ## 51, 51-8). The second summary judgment motion raises the same argument and adds, as an exhibit, a complete copy of the settlement agreement.

Deutsche and Hong did not file the settlement agreement to support the first summary judgment motion. Rather, they filed an affidavit which stated, "The plaintiff and Third-Party Defendants have reached a settlement for the sum of $5,000.00." (Docket Entry # 44). They did not include the settlement agreement "due to a desire not to make it a document of public record." (Docket Entry # 51-8, n.3). The explanation is not convincing for two reasons. First, Deutsch and Hong easily could have filed a motion for leave to file the settlement agreement under seal when they filed the first summary judgment motion. Second, the fact that they filed the settlement agreement with the second summary judgment motion on the court's publically accessible docket makes their explanation questionable, at best.

On April 29, 2016, Lavelle filed its motion for leave and an

3

attached summary judgment motion based on plaintiff's expert reports and March 2016 depositions of Richard D. Mansfield ("Mansfield") and Shaun L. McKenna ("McKenna"), plaintiff's experts. (Docket Entry # 75). Lavelle submits that Mansfield and McKenna "are unable to state with any reasonable degree of scientific certainty when during the nearly three year period between manufacture and the date of loss the retaining clips failed; or how the clips failed; or why the clips failed." (Docket Entry # 75). Two weeks later, Toto filed its motion for leave to file its summary judgment motion. Relying on Mansfield's and McKenna's recent deposition testimony, Toto grounds the summary judgment motion on the inability of McKenna and Mansfield to opine with a reasonable degree of scientific certainty when, how and why the retaining clips on the valve failed. (Docket Entry ## 80, 80-2, 80-3).

The first two expert reports by Mansfield and McKenna dated September 24 and October 15, 2010 focused on a failure of the cracked retaining clips that secured "the outer adjustable half of the valve to the inner shaft." (Docket Entry # 75-4, pp. 30, 40). Upon inspection after the water leak, the "two plastic tabs" holding the outer adjustable half of the valve to the inner shaft were "at the bottom of the tank." (Docket Entry # 75-4, p. 40). The former report states that the plastic retaining clips "cracked possibly during manufacture, shipping," installation or

4

adjustment and concludes that the clips "could have cracked at any time during the manufacture and handling over the last 2-3 years." (Docket Entry # 75-4, p. 30). Plaintiff represents that it produced these two reports to Lavelle and Toto on August 24, 2014.

An August 2015 summary report by Mansfield and McKenna narrows the timeline and refers to hairline cracks or fractures as opposed to cracks insofar as it states that, "Damage, including hairline cracks, may occur at many points during the manufacture/shipping of the parts, assembly/manufacture/shipping of the valve, and installation of the valve." (Docket Entry # 75-4, p. 64). It concludes that, "The cause of the broken tabs is apparent hairline fractures . . . during manufacture . . ., valve assembly . . ., installation of the valve into the Toto toilet, and/or shipment . . .." (Docket Entry # 75-4, p. 68). In a December 2015 supplemental report, Mansfield and McKenna did not alter their "opinion of the cause of the failure." (Docket Entry # 75-4, p. 59).

Destructive testing of the valve took place in September 2015. Mansfield's and McKenna's depositions took place in March 2016. Excerpts of the depositions reflect an inability to identify exactly when the retaining clips failed and excerpts of McKenna's deposition indicate an inability to opine how and why the clips failed.

Notably, the deadline to file a summary judgment motion was June 15, 2015. (Docket Entry # 18). This court established the deadline at a status conference on May 28, 2014 when it adopted the parties' Local Rule 16.1(d) joint statement. (Docket Entry # 18). As a result, this court set the following deadlines: joinder of additional parties and amendments to the pleadings (August 26, 2014); fact discovery (November 28, 2014); expert disclosures by plaintiff (December 31, 2014); expert disclosures by defendants (February 13, 2015); dispositive motions (June 15, 2015); and "trial readiness" (September 15, 2015). (Docket Entry ## 17, 18). As explained below, although this court changed a number of these deadlines, the June 15, 2015 deadline for dispositive motions did not change and remains in effect.

Specifically, on October 2, 2014, this court extended the deadline to complete fact discovery to February 14, 2015. (Docket Entry # 21). On January 14, 2015, this court extended the deadline for plaintiff's and defendants' expert disclosures to March 31, 2015 and April 17, 2015 respectively. (Docket Entry # 23). Two weeks later, Toto filed the motion for leave to file the third-party complaint because discovery in the fall of 2014 uncovered a basis for the contribution claims against Deutsche and Hong. (Docket Entry # 25, pp. 2-4). Toto's supporting memorandum correctly noted that, "The parties appeared before this Court on May 28, 2014 for a Rule 16 Scheduling Conference"

and "the Court endorsed the proposed discovery schedule included in the parties' Joint Statement Pursuant to Local Rule 16.1(D) (see Docket No. 18)."[1]  (Docket Entry # 25, p. 2).

At a March 2, 2015 hearing, this court allowed the motion (Docket Entry # 24).  (Docket Entry # 31).  During the hearing, Deutsche and Hong's counsel referenced the aforementioned August 26, 2014 deadline for joining additional parties established when this court adopted the Local Rule 16.1 joint statement.  As noted above, the joint statement adopted by this court included the June 15, 2015 deadline for dispositive motions.  (Docket Entry ## 17, 18).  During the hearing, Deutsche and Hong did not request any additional time to file a dispositive motion.  Instead, they sought additional time to conduct discovery.  Accordingly, this court allowed them an additional 60 days, i.e., until April 14, 2015, to complete discovery.  This court also advised the parties that the case needed to be tried by the end of the year.

On April 3, 2015, Deutsche and Hong filed an assented-to motion to amend the discovery plan in light of their recent

---

[1]  Toto disingenuously argues that, "No deadline for discovery or dispositive motions has run" and that Fed.R.Civ.P. 56(b) ("Rule 56(b)") (Docket Entry # 81) therefore allows it to file the summary judgment motion up until 30 days after the close of discovery.  (Docket Entry ## 80, 81).  Rule 56(b) states that, "Unless a different time is set by local rule or *the court orders otherwise*, a party may file a motion for summary judgment at any time up until 30 days after the close of all discovery." Fed.R.Civ.P. 56(b) (emphasis added).  This court "order[ed] otherwise" when it established the June 15, 2015 dispositive motion deadline.

7

joinder as third-party defendants. (Docket Entry # 38). The motion did not request an extension of the June 15, 2015 deadline for filing dispositive motions. On April 6, 2015, this court allowed the motion thereby establishing new deadlines for: fact discovery (July 31, 2015); plaintiff's expert disclosures (August 14, 2015); defendants' expert disclosures (September 15, 2015); third-party defendants' expert disclosures (October 15, 2015); and trial readiness (November 13, 2015). (Docket Entry # 39).

At an August 11, 2015 status conference this court extended the deadlines for expert disclosures by 30 days. (Docket Entry # 49) (Docket Entry # 54, pp. 10-11). Again, this court advised the parties that, because this was a 2013 case, it needed to be returned to the district judge for trial.

Deutsche and Hong filed their first summary judgment motion on August 20, 2015. Because neither party objected to the late filing and the November 13, 2015 deadline for trial readiness had not passed, this court did not deny the motion as untimely.

On January 25, 2016, this court issued a lengthy Report and Recommendation on the summary judgment motion. Deutsche and Hong filed objections based, in part, on the existence of the good faith settlement. On March 31, 2016, the district judge overruled the objections. Two weeks later, the parties consented to proceed before this court under 28 U.S.C. § 636(c) and, shortly thereafter, Deutsche and Hong filed their second summary

judgment motion and Toto and Lavelle filed their motions for leave to file a summary judgment motion.

## DISCUSSION

"'[T]he Civil Rules endow trial judges with formidable case-management authority.'"  Mulero-Abreu v. Puerto Rico Police Dept., 675 F.3d 88, 91 (1st Cir. 2012) (quoting Rosario-Diaz v. Gonzalez, 140 F.3d 312, 315 (1st Cir. 1998)).  Federal Rule of Civil Procedure Rule 16(b) ("Rule 16(b)") allows the court to issue a scheduling order for the filing of motions and "'"a litigant who ignores a case-management deadline does so at his peril."'"• Vazquez-Rijos v. Anhang, 654 F.3d 122, 129 (1st Cir. 2011) (quoting Young v. Gordon, 330 F.3d 76, 82 (1st Cir. 2003)).  "[P]arties should not be allowed casually to flout [a case management deadline] or painlessly to escape the foreseeable consequences of noncompliance."  Velez v. Awning Windows, Inc., 375 F.3d 35, 41 (1st Cir. 2004); accord O'Connell v. Hyatt Hotels of Puerto Rico, 357 F.3d 152, 155 (1st Cir. 2004) ("litigants cannot be permitted to treat a scheduling order as a 'frivolous piece of paper idly entered, which can be cavalierly disregarded without peril'").  Deadlines for filing motions are essential to proper and effective case management.  See Serrano-Perez v. FMC Corporation, 985 F.2d 625, 627-628 (1st Cir. 1993) (stating that "discovery deadlines are necessary for" proper case management).

The present deadline of June 15, 2015 is no exception. Filed in January 2013, this case is more than three years old. Trial is set to commence on July 25, 2016.  Judicial economy is

not served by addressing the same argument Deutsch and Hong made previously.

Like the defendants in Rosario-Diaz, Deutsche and Hong offer "no compelling explanation for their delinquency." Rosario-Diaz v. Gonzalez, 140 F.3d at 315. As noted above, there is no good reason for not seeking to file the complete settlement agreement under seal at the time Deutsch and Hong filed their first summary judgment in August 2015.

Deutsch and Hong's reliance on language in a footnote of the Report and Recommendation as authorizing the late filing is not convincing. After concluding that Deutsche and Hong were not entitled to summary judgment on the basis of a good faith settlement, this court stated that, "Because the statute is designed to encourage settlement, Deutsch and Hong are not foreclosed from raising the issue later in these proceedings." (Docket Entry # 63, fn. 12). The statement does not sub silento eviscerate the deadline to file dispositive motions. See generally Iacobucci v. Boulter, 193 F.3d 14, 19 (1st Cir. 1999) (recognizing that "trial court ordinarily is the best expositor of its own orders" and deferring to district judge's interpretation of her own order denying summary judgment). Rather, with the deadline having passed to file a summary judgment motion and the case ready for trial, the January 2016 opinion simply recognized that Deutsch and Hong could raise the issue "later in these proceedings," i.e., during the trial. Moreover, even though they recognized the deadline to name

additional parties in the joint statement at the March 2, 2015 hearing and therefore implicitly recognized the June 15, 2015 deadline, Deutsch and Hong did not ask for a modification of the dispositive motion deadline, let alone show "good cause" for a modification within the meaning of Rule 16(b)(4) at this late date.

With respect to the motions for leave, plaintiff vigorously objects to the late filings. It reasons and this court agrees that the delay will prejudice plaintiff because it has expended time, energy and money in preparing for the July 2016 trial. Reviewing and adjudicating Toto's and Lavelle's summary judgment motions will delay the trial until late fall at the earliest. Moreover, this court admonished the parties that this case needed to be tried by the end of 2015 and subsequently advised the parties that the case needed to be returned to the district judge for trial.

In addition, the September 2010 expert report by Mansfield and McKenna posits that the retaining clips cracked during the "manufacture and handling over the last 2-3 years" and that the cracked clips failed and allowed water to leak out of the toilet on September 16, 2010. (Docket Entry # 75-4, p. 30). The body of the report further notes that the clips "cracked possibly during manufacture, shipping," installation or adjustment. (Docket Entry # 75-4, p. 30). Whereas the October 2010 report notes that, "lateral pressure as well as use of a screw driver by a non-plumber could cause the tabs to break allowing normal water

11

pressure to push the [halves] of the valve apart," it then immediately states that, "[t]he vulnerable plastic tabs could have cracked and broken at any time during handling, installation or adjustment over the last 2-3 years" and that, "[t]he cracked tabs failed on September 10, 2010 allowing normal water pressure to push the outer adjustable sleeve off the inner shaft causing water to leak into and out of the toilet tank." (Docket Entry # 75-4, p. 41). The reports therefore foreshadow weaknesses in identifying whether the cracks developed during manufacture, shipping, installation or adjustment and, by extension, the mechanism of how the cracks developed. Although the March 2016 depositions exposed those weaknesses to a greater degree, Toto and Lavelle had the reports foreshadowing the weaknesses approximately ten months before the June 15, 2015 deadline yet failed to file a summary judgment prior to that deadline. Moreover, the September 2015 destructive testing did not prevent Lavelle or Toto from noticing expert depositions based on the 2010 initial expert reports before the June 15, 2015 deadline and then suspending the depositions to address subsequent testing. The argument that the recent, March 2016 expert depositions exposed the basis for filing a summary judgment motion therefore lacks merit.

The August 2015 report narrows the timeline and refers to hairline fractures as opposed to cracks. The differences between this report and the earlier reports disclosed before the June 15, 2015 deadline is one of degree. Overall, the August 2015 report

is not a significant departure or change from the experts' prior opinions.

Finally, allowing leave will delay and not necessarily avoid the trial. In light of the other cases on this court's docket, allowing leave will not result in a quicker resolution of this three old case. Rather, ignoring the deadline will delay a final adjudication into the fall of 2016, at the earliest. Judicial economy is not well-served by allowing leave.

Sanctions for ignoring case management deadlines include "the preclusion of untimely summary judgment motions." Rosario-Diaz v. Gonzalez, 140 F.3d at 315; see Fed.R.Civ.P. 16(f). Exercising this court's discretion in light of the totality of the circumstances, the second summary judgment motion and the motions for leave are denied as untimely.

## CONCLUSION

In accordance with the foregoing discussion, the second summary judgment motion (Docket Entry # 73) and the motions for leave to file a summary judgment motion (Docket Entry ## 75, 80) are **DENIED**.

                        /s/ Marianne B. Bowler
                        **MARIANNE B. BOWLER**
                        United States Magistrate Judge